IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| RACHELLE ZANDERS, ROBERTHA LARMOUTH, MICHELLE STRAWMAN,  MERCY ISSA, and Employees Similarly Situated to Them, | |
| Plaintiffs, | **No. 4:14-cv-00288 – JEG-RAW** |
| vs. | **O R D E R** |
| WELLS FARGO BANK N.A. d/b/a WELLS FARGO HOME MORTGAGE, KETH MALONE, and BRIAN FREESE, in Their Individual and Corporate Capacities, | |
| Defendants. | |

This matter comes before the Court on Motion to Dismiss by Defendants Wells Fargo

Bank N.A. d/b/a/ Wells Fargo Home Mortgage (Wells Fargo), Keth Malone, and Brian Freese

(collectively, Defendants), as well as Motion for Leave to Amend First Amended Petition and

Jury Demand and Motion for Leave to Amend Second Amended Petition and Jury Demand by

Plaintiffs Rachelle Zanders, Robertha Larmouth, Michelle Strawman, Mercy Issa, and

employees similarly situated to them (collectively, Plaintiffs).  Plaintiffs resist Defendants'

motion, and Defendants resist Plaintiffs' motions.

The Court conducted a hearing on Defendants' Motion to Dismiss and Plaintiffs' first

Motion to Amend on October 1, 2014.  Attorney Mark Sherinian was present on behalf of Plain-

tiffs, and attorneys Karin A. Johnson and Michael Guidicessi were present on behalf of Defen-

dants.  Plaintiffs filed their second Motion to Amend after the hearing, and Defendants responded.

Neither party requested a hearing on the second Motion to Amend, and the Court finds that a

hearing on that issue is unnecessary.  Accordingly, each motion is fully submitted and ready

for disposition.

## I.   BACKGROUND[1]

All of the named plaintiffs are citizens of Iowa.  Defendant Wells Fargo is a legal entity organized in California, and its principal place of business is in Des Moines, Iowa.  The individual defendants Keth Malone and Brian Freese are citizens of Iowa and were managers and/or supervisors with Wells Fargo at all relevant times.  Plaintiffs were formerly employed by Wells Fargo as Home Preservation Specialists.  Plaintiffs were paid hourly and contend they were subject to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq.

Plaintiffs allege that Wells Fargo, through its agents Malone and Freese, required Plaintiffs to "assume workloads that could not reasonably be performed within a forty hour work week," and Defendants told Plaintiffs not to report overtime and criticized them if they did.  This caused Plaintiffs to work "off-the-clock" without payment for overtime.  Plaintiffs contend that they worked between 50 and 60 or more hours per week.  The Second Amended Petition explains that Plaintiffs were required to simultaneously assume responsibility for "more than 60 cases" involving defaulting borrowers.  The Third Amended Petition alters this allegation to provide "Plaintiffs were told that they were required to handle 60 files at a time, but were normally assigned 90 to 100 files at a time."  Third Am. Pet. ¶ 18, ECF No. 15-1.

In Count 1, Plaintiffs assert that Defendants intentionally failed to pay Plaintiffs the wages due to them, and accordingly Iowa Code § 91A.8, referred to as the Iowa Wage Payment Collection Law (IWPCL), entitles Plaintiffs to back wages, court costs, attorneys' fees, and liquidated damages.  Count 2 alleges that Plaintiffs were "employees" and Defendants are "employers" as

---

[1] The Court must accept as true all facts alleged in the Petition for purposes of a Rule 12(b)(6) motion to dismiss.  <u>Zutz v. Nelson</u>, 601 F.3d 842, 848 (8th Cir. 2010).  As noted *infra*, pursuant to Fed. R. Civ. P. 15(a)(2), the Court does grant leave and considers the Second and Third Amended Petitions.  The Court does not find the amendments to be futile.  <u>See</u>, <u>e.g.</u>, <u>Silva v. Metro. Life Ins. Co.</u>, 762 F.3d 711, 719 (8th Cir. 2014).

defined by the FLSA.  See 29 U.S.C. § 203(d)-(e)(1) (2012).  The Petition further alleges that –

in violation of 29 U.S.C. § 207(a)(1) (2012) – Wells Fargo is "engaged in commerce," it

employed Plaintiffs for more than forty hours per week, and did not properly pay them over-

time.  Count 2 requests damages for unpaid wages and interest, liquidated damages, attorneys'

fees, and court costs.

Defendants' 12(b)(6) motion to dismiss makes three primary arguments.  Defendants argue

that Plaintiffs' IWPCL claim duplicates their FLSA claim, and accordingly the FLSA preempts

the IWPCL.  In the alternative, Defendants argue that Malone and Freese are not "employers"

within the meaning of the IWPCL.  Finally, Defendants argue that Plaintiffs have not alleged

sufficient facts – in any of their Petitions – to plausibly suggest that similarly situated employees

are entitled to relief.

## II.   DISCUSSION

### A.  Jurisdiction

The Court has jurisdiction over the FLSA claims under 28 U.S.C. § 1331 and 29 U.S.C. §

216(b).  In addition, the Court may exercise supplemental jurisdiction over the IWPCL claims

under 28 U.S.C. § 1367.  See Lindsay v. Gov't Emps. Ins. Co., 448 F.3d 416, 424 (D.C. Cir.

2006) (finding supplemental jurisdiction over state-law wage claims when the plaintiffs brought

claims under both the FLSA and the state wage claim statute); Salazar v. Agriprocessors, Inc.,

527 F. Supp. 2d 873, 884-87 (N.D. Iowa 2007) (finding supplemental jurisdiction over IWPCL

claims when the plaintiffs also made FLSA claims).  But see De Asencio v. Tyson Foods, Inc.,

342 F.3d 301, 312 (3d Cir. 2003) (holding that exercising supplemental jurisdiction over state-

law wage claims was inappropriate under 28 U.S.C. § 1367(c)(1)-(2)).

### B.   Applicable Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  However, the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (abrogating Conley v. Gibson, 355 U.S. 41 (1957)) (alteration in original) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).  To survive a Rule 12(b)(6) "motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  Under the current pleading standard, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679.

The Court uses the same Rule 12(b)(6) standard when considering whether amending a complaint would be futile.  Cornelia I. Crowell GST Trust v. Possis Med., Inc., 519 F.3d 778, 781-82 (8th Cir. 2008).  "Ordinarily, the decision of whether to allow a plaintiff leave to amend a complaint is within the district court's discretion, however, when the court denies leave on the basis of futility, it means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6)."  Id.

Accordingly, as Defendants have argued that each of Plaintiffs' proposed amended petitions would be futile, it is appropriate in the circumstances of this case to simultaneously

consider Defendants' Motion to Dismiss and Plaintiffs' Motions to Amend.  The Court must

determine if any of Plaintiffs' Petitions state a plausible claim for relief.

### C.  Preemption

Defendants argue that the FLSA preempts the IWPCL and thus the Court should dismiss

the state-law claim.  Defendants observe that the IWPCL does not define the amount of wages

employers must pay their employees, but rather the statute concerns when and how wages are

paid.  Defendants argue that because Plaintiffs do not allege any entitlement to the wages they

seek other than the FLSA, their IWPCL claim is entirely dependent on the FLSA claim.  Defen-

dants cite several cases, including Anderson v. Sara Lee Corp., 508 F.3d 181, 192-93 (4th Cir.

2007), which have held that the FLSA preempts state-law claims that duplicate FLSA claims.

See also Roble v. Celestica Corp., Civil No. 06-2934 (JRT/FLN), 2006 WL 3858396, at *3 (D.

Minn. Dec. 29, 2006) (refusing to dismiss non-duplicative state-law claims, but noting "common

law claims based on the same facts and circumstances as an FLSA claim may be preempted

under the FLSA.").

Defendants acknowledge that in Bouaphakeo v. Tyson Foods, Inc., 564 F. Supp. 2d 870,

883 (N.D. Iowa 2008), the district court rejected the argument they make here – that, at a

minimum, the FLSA preempts IWPCL claims that entirely duplicate FLSA claims.  However,

Defendants note that the court in Bouaphakeo recognized that its decision departed from several

other courts' resolution of similar issues.  See id. at 885 ("Of course, the court is aware of the

plethora of cases holding that the FLSA preempts duplicative state law claims.").  Defendants

argue this departure was inappropriate because Bouaphakeo mistakenly relied on the FLSA's

"savings clause," which provides,

> No provision of this chapter or of any order thereunder shall excuse noncompliance with
> any Federal or State law or municipal ordinance establishing a minimum wage higher

than the minimum wage established under this chapter or a maximum work week lower than the maximum workweek established under this chapter . . . .

29 U.S.C § 218(a). Defendants assert that this clause allows states to set a higher minimum wage but does not allow plaintiffs to use state wage-collection laws to pursue more generous remedies for violations of the FLSA.

Plaintiffs resist Defendants' motion by arguing that even if their IWPCL claims are duplicative of their FLSA claims, Bouaphakeo correctly rejected the exact argument that Defendants make in this case. Moreover, Plaintiffs continue, other Eighth Circuit courts have refused to find that the FLSA preempts state-law claims when, at the motion to dismiss stage, the plaintiffs alleged facts suggesting that their state-law claims may not be dependent on the FLSA. See Osby v. Citigroup, Inc., No. 07-CV-06085-NKL, 2008 WL 2074102, at *2 (W.D. Mo. May 14, 2008) (noting that "[a]lthough state law claims sharing core facts with FLSA claims may be preempted," plaintiffs' unjust enrichment claims might not be duplicative). Although Plaintiffs do not make explicit breach of contract or quantum meruit claims, they argue that their state-law claims are "parallel to" (rather than duplicative of) their FLSA claims because "Defendants agreed to pay the Plaintiffs wages for the time they worked but failed to do so." Pls.' Resist. Defs.' Mot. Dismiss 3, ECF No. 8-1.

In Arizona v. United States, 132 S. Ct. 2492 (2012), the Supreme Court summarized the preemption doctrine. "The Supremacy Clause provides a clear rule that federal law 'shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.'" Id. at 2500 (citing U.S. Const. art. VI, cl. 2). Accordingly, when properly acting pursuant to its enumerated powers, "Congress has the power to preempt state law." Id.

Congress may preempt state laws in at least three ways. Id. Congress may preempt state laws with an express statutory provision. Id. at 2500-01 (citing Chamber of Commerce of

6

United States of Am. v. Whiting, 131 S. Ct. 1968, 1974-1975 (2011)).  Second, Congress

preempts state law when it chooses to regulate a field exclusively.  Id. at 2501.  This "field

preemption" can "be inferred from a framework of regulation 'so pervasive . . . that Congress left

no room for the States to supplement it' or where there is a 'federal interest . . . so dominant that

the federal system will be assumed to preclude enforcement of state laws on the same subject.'"

Id. (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)).  Third, "state laws are

preempted when they conflict with federal law."  Id. (citing Crosby v. Nat'l Foreign Trade

Council, 530 U.S. 363, 372 (2000)).  Such an impressible conflict arises if it is impossible to

comply with both federal and state law or "where the challenged state law 'stands as an obstacle

to the accomplishment and execution of the full purposes and objectives of Congress.'"  Id.

(quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)).

        More specifically, a federal statute preempts a state statue "if it interferes with the methods

by which the federal statute was designed to reach [a] goal.  Forest Park II v. Hadley, 336 F.3d

724, 733 (8th Cir. 2003) (quoting CSX Transp. Inc. Easterwood, 507 U.S. 658, 663 (1993)).

However, "[i]n determining whether state law 'stands as an obstacle' to the full implementation

of a federal law, 'it is not enough to say that the ultimate goal of both federal and state law' is the

same."  Id. (quoting Int'l Paper Co. v. Ouellette, 479 U.S. 481, 494 (1987)).  Whether a state law

creates an impermissible "obstacle is a matter of judgment, to be informed by examining the

federal statute as a whole and identifying its purpose and intended effects."  Crosby, 530 U.S. at

373.  "In preemption analysis, courts should assume that 'the historic police powers of the

States' are not superseded 'unless that was the clear and manifest purpose of Congress.'"

Arizona, 132 S. Ct. at 2501 (quoting Rice, 331 U.S. at 230).

        In the case now before the Court, "keeping in mind that the three categories of preemption

are somewhat related, the only question is whether Plaintiffs' IWPCL claim is barred under a

conflict preemption analysis.  Express and field preemption do not apply because Congress did not specifically prohibit state regulation in this area," and the FLSA savings clause indicates that Congress did not intend to preempt all state laws in the field.  Bouaphakeo, 564 F. Supp. 2d at 880-81; see also Anderson, 508 F.3d at 192 n.10 (discussing whether the FLSA preempts a state wage law and holding "[t]here is no question that express preemption and field preemption are inapposite to this dispute").

The FLSA and the IWCPL clearly have similar goals.  See Stahl v. Big Lots Stores, Inc., No. 06-CV-1026-LRR, 2007 WL 3376707, at *4 (N.D. Iowa Nov. 7, 2007) ("The purpose of the FLSA and the IWPCL is to 'facilitate the collection of wages owed to employees.'" (quoting Phipps v. IASD Health Servs. Corp., 558 N.W.2d 198, 201 (Iowa 1997))).  In relevant part, the FLSA, as codified in 29 U.S.C. § 207(a), provides that, except as otherwise provided, no employer shall employ any employee "engaged in commerce" for more than forty hours per workweek unless the employee receives one and one-half times her regular rate of pay for the overtime hours.  Any employer that violates the FLSA's minimum wage or overtime provisions "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  The FLSA also allows successful plaintiffs to recover attorneys' fees and costs.  Id.

The IWCPL provides that "an employer shall pay all wages due its employees, less any lawful deductions . . . at least in monthly, semimonthly, or biweekly installments. . . ."  Iowa Code § 91A.3.  The IWCPL provides that if an "employer has intentionally failed to pay an employee wages . . . the employer shall be liable to the employee for any wages or expenses that are so intentionally failed to be paid or reimbursed, plus liquidated damages, court costs and any attorney's fees incurred in recovering the unpaid wages . . . ."  Id. § 91A.8.

An important difference between the FLSA and the IWPCL is that the IWPCL does not establish the amount of wages an employer must pay its employees. Bouaphakeo, 564 F. Supp. 2d at 883. Rather, "the IWPCL simply requires that an employer 'pay all wages due its employees.'" Id. (citing Iowa Code § 91A.3); Daniel V. Dorris, Note, Fair Labor Standards Act Preemption of State Wage-and-Hour Law Claims, 76 U. Chi. L. Rev. 1251, 1258 (2009) ("The [IWPCL] is purely remedial and does not provide the amount of wages to be paid, instead [it] rel[ies] on Iowa's wage-and-hour law or the FLSA.") (footnote omitted).

In addition, although both the FLSA and the IWPCL allow named plaintiffs to make claims on behalf of others similarly situated, the statutes contain a crucial difference. The FLSA allows employees to make claims on behalf of themselves and "other employees similarly situated;" however, "[n]o employee shall be a party plaintiff to any such action *unless he gives his consent in writing to become such a party* and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b) (emphasis added). In contrast, the IWPCL does not contain a special collective action procedure. Accordingly, Federal Rule of Civil Procedure 23 would govern a class action raising a IWPCL claim in federal court.[2] The FLSA's opt-in requirement is "a fundamental, irreconcilable difference between [§ 216(b) and] the class action described by Rule 23[b][3]," which includes class members by default, but allows class members to *opt-out* of a certified class. Schmidt v. Fuller Brush Co., 527 F.2d 532, 536 (8th Cir. 1975).

The Eighth Circuit has not directly considered whether this conflict causes the FLSA to preempt state-law wage claims that would allow plaintiffs to pursue a Rule 23 class action and an FLSA collective action simultaneously. See Bouaphakeo, 564 F. Supp. 2d at 880 (noting that circuit court opinions on this topic are sparse, including Eighth Circuit opinions). However, in

---

[2] Iowa Rule of Civil Procedure 1.267(1) is similar to Rule 23(b)(3) in that, with some exceptions, "[a] member of a plaintiff class may elect to be excluded from the [class] action."

Anderson, the Fourth Circuit held that the FLSA preempted plaintiffs' state-law claims that "depend on establishing that [the defendant] violated the FLSA." 508 F.3d at 193. The Anderson court explained that "'the mere existence of a federal regulatory or enforcement scheme' – even if the scheme is an appreciably detailed one – 'does not by itself imply pre-emption of state remedies.'" Id. (quoting English v. Gen. Elec. Co., 496 U.S. 72, 87 (1990)). Yet, the court found that the FLSA contains "an unusually elaborate enforcement scheme," id. at 192 (quoting Kendall v. City of Chesapeake, 174 F.3d 437, 443 (4th Cir. 1999)), and this enforcement scheme provides the exclusive remedy for enforcing the Act. Id. at 194. The court reasoned 29 U.S.C. § 216(b)-(c) contains "special feature[s] . . . that would be rendered super-fluous if workers were able to circumvent that scheme while pursuing their FLSA rights." Id. (quoting Kendell, 174 F.3d at 443). Accordingly, the court found that the FLSA preempted dependent state law claims, and the court bolstered its conclusion with citations to many district courts that had reached the same holding. Id. Yet, the court acknowledged that some courts had reached the opposite result.

In Williamson v. General Dynamics Corporation, 208 F.3d 1144 (9th Cir. 2000), the Ninth Circuit considered whether the FLSA preempted the plaintiffs' state-law fraud claims. The court noted that the plaintiffs in that case were not asserting fraud claims in an attempt to "avoid[] the FLSA [and] seek a more favorable remedy." Id. at 1153. In other words, the plaintiffs' state-law claims did not duplicate their FLSA claims. See id.; see also Osby, 2008 WL 2074102, at *2; Roble, 2006 WL 3858396, at *3 (distinguishing duplicative and non-duplicative state-law wage claims). Accordingly, the Williamson court held,

> The [plaintiffs'] career fraud claims do not conflict with purpose of the FLSA of pro-
> tecting employees. Nor do they upset by any balance created by amendments to the
> statute. Fraud claims by employees do not conflict with the FLSA any more than claims
> for wrongful death, assault, or murder. *Claims that are directly covered by the FLSA*

*(such as overtime and retaliation disputes) must be brought under the FLSA.  That is not the case here.*

Williamson, 208 F.3d at 1154 (emphasis added).

In Bouaphakeo, the Northern District of Iowa discussed both Anderson and Williamson. 564 F. Supp. 2d at 880.  The court rejected Anderson's conclusion that the FLSA provides the exclusive remedies for its violation.  Id. at 884.  The court noted the Williamson court's discussion of the FLSA's "savings clause," 29 U.S.C. § 218(a).  The court reasoned, "Under the savings clause, a state may clearly provide greater benefits, or rights, than the FLSA.  While the savings clause does not specifically reference remedies, the court believes the savings clause indicates that Congress did not foreclose states from providing alternative remedies."  Id. Accordingly, the court held that the plaintiffs' IWPCL claims did not conflict with the FLSA's goal of eliminating "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers."  Id. at 885 (quoting Anderson, 508 F.3d at 192 (quoting 29 U.S.C. § 202(a))).

The Bouaphakeo court reached its conclusion that the FLSA does not preempt duplicative state-law claims notwithstanding its exhaustive summary of cases and observation that "nearly every court to consider the issue recognizes that state law claims that merely duplicate or depend on the FLSA are preempted by federal law."  Id. at 886.  However, the court noted that many cases have held that the FLSA "does not *generally* preempt state law claims in a given case."  Id. (emphasis in original).

Although not directly on point, several other decisions potentially buttress the district court's decision in Bouaphakeo.  After the district court's decision in Bouaphakeo, the case was transferred to the Southern District of Iowa.  See Bouaphakeo v. Tyson Foods, Inc., 765 F.3d 791, 801 (8th Cir. Aug. 25, 2014) [hereinafter Bouaphakeo II].  The Bouaphakeo case proceeded

to trial and the jury was permitted to consider the FLSA claim and the IWPCL claims simul-

taneously.  Id. at 796 n.4.

After a verdict in favor of the plaintiffs, the defendant did not directly appeal the pre-

emption issue.  Brief for Appellant, Bouaphakeo II, 765 F.3d 791, 2013 WL 663846.  The Eighth

Circuit affirmed the verdict and did not raise the preemption issue *sua sponte* and did not object

to the manner that the FLSA claim and the IWCPL claim was presented to the jury.  However,

Circuit Judge Beam dissented.  He asserted, among other objections, that "Rule 23 state-law-

based class actions are fundamentally different than collective actions authorized under the

FLSA and may not be procedurally homogenized for trial as done in this case."  Bouaphakeo II,

765 F.3d 800 (Beam, J., dissenting) (citing Genesis Healthcare Corp. v. Symczyk,, 133 S. Ct.

1523, 1529 (2013)).[3]  The majority rejected the dissent's argument in a footnote, explaining,

> FLSA collective actions and Rule 23 class actions have separate procedures, such as the
> "opt in" requirement to an FLSA collective action and the "opt out" requirement for a
> Rule 23 class action . . . .  Contrary to the dissent's statement, the Supreme Court in
> Symczyk did not find that these actions "may not be procedurally homogenized for
> trial" or "do not lend themselves to inextricably intertwined trials."  Neither party
> complains of procedural error from "homogenizing" the claims at trial.

Id. at 796 n.4.[4]

In Salazar v. Agriprocessors, Inc., rather than being directly asked to confront the pre-

emption issue, the Northern District of Iowa considered whether it had supplemental jurisdiction

over the plaintiffs' IWPCL claims.  527 F. Supp. 2d at 876.  The defendants asserted "that the

---

[3] In Symczyk, the Supreme Court stressed the "fundamental[] differen[ce] between FLSA
collective actions and Rule 23 class actions, and the Court decided that mootness of a named
plaintiff's FLSA claim moots a collective action on behalf of purportedly similarly situated
plaintiffs.  Symczyk, 133 S. Ct. at 1524.

[4] Conflict preemption is not jurisdictional but an affirmative defense.  See Wuebker v.
Wilbur-Ellis Co., 418 F.3d 883, 886 (8th Cir. 2005); thus, the Court of Appeals was not required
to *sua sponte* address the issue not raised by the parties.

FLSA Claim and the IWPCL Claim are incompatible due to the divergent required procedures, and . . . dismissal of the class action claim is required." Id.  Nonetheless, the court found it had supplemental jurisdiction over the IWPCL claim because the claims arose out of a "common nucleus of operative fact." Id. at 880.  In reaching this conclusion, the court relied on Lindsay v. Government Employees Insurance Co., 448 F.3d at 424, which held that a district court had supplemental jurisdiction under § 1367(a) in an analogous case.

The Salazar court considered whether it should decline supplemental jurisdiction pursuant to the factors in 28 U.S.C. § 1367(c).[5]  The Northern District considered a split of authority. Some cases, such as Lindsay, asserted that the difference between the class action and collective action procedures did not strip the court of supplemental jurisdiction or warrant a district court's use of its discretion to decline supplemental jurisdiction.  Salazar, 527 F. Supp. 2d at 882 (citing Lindsay, 448 F.3d at 425).  Lindsay reasoned as follows:

> While there is unquestionably a difference – indeed, an opposite requirement – between opt-in and opt-out procedures, we doubt that a mere *procedural* difference can curtail section 1367's *jurisdictional* sweep.  Regardless of any policy decision implicit in section 216(b)'s opt-in requirement . . . . in enacting section 1367(a), the Congress made its intent regarding the exercise of supplemental jurisdiction clear: "Congress conferred a broad grant of jurisdiction upon the district courts, indicating a congressional desire that, 'supplemental jurisdiction at least in the first instance . . . go to the constitutional limit, to which it appeared to be carried in . . .  [United Mine Workers v. Gibbs, 383 U.S. 715 (1966)].'"

Lindsay, 448 F.3d at 424 (quoting In re Walker, 51 F.3d 562, 571-72 (5th Cir. 1995) (foot-note omitted).

_____

[5] 28 U.S.C § 1367(c) provides, "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if – (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

Other courts have found that the congressional intent of the FLSA required them to decline supplemental jurisdiction in similar cases because permitting both claims would allow plaintiffs to circumvent the FLSA's opt-in requirements. See Salazar, 527 F. Supp. 2d at 885 (collecting cases). In addition, the Third Circuit has reversed a district court for exercising supplemental jurisdiction over state-law wage claims. Id. at 883 (citing De Asencio, 342 F.3d at 301). The Third Circuit reasoned that the state-law claims would predominate over the FLSA claims because there were many more class members in the state class and the state claims raised novel issues of state law. Id. Nevertheless, the Salazar court was

> not convinced that Congress's intent in [passing the Portal-to-Portal Act in] 1947 requires the court to refuse to exercise supplemental jurisdiction over the class action portion of the IWPCL Claim. . . . Since 1947, Congress has done nothing to add language to the FLSA to expressly prohibit the exercise of supplemental jurisdiction over claims based on state wage and hour laws. For example, Iowa promulgated the IWPCL in 1975, *see* Iowa Code § 91A.1 (1975), but, in the thirty-two years since its passage, Congress has refrained from enacting a law which provides for FLSA preemption of this state counterpart.

Id. at 884-85.

This Court finds it highly significant that, with the exception of the Northern District in Bouaphakeo, courts that have directly considered the preemption issue have found that the FLSA preempts duplicative state-law claims. The Fourth Circuit persuasively reasoned that allowing plaintiffs to use procedures other than those established in 20 U.S.C. § 216(b) would render that section superfluous. Anderson, 508 F.3d at 184. Additionally, although Bouaphakeo purported to rely on Williamson, the Ninth Circuit asserted in that case that "[c]laims that are directly covered by the FLSA (such as overtime and retaliation disputes) must be brought under the FLSA." Williamson, 208 F.3d at 1154.

Moreover, this Court is ultimately not persuaded by Bouaphakeo's analysis of preemption because it did not resolve the conflict between § 216(b)'s opt-in collective action procedure and

Rule 23's opt-out procedure.  <u>Bouaphakeo</u> placed its reliance on the savings clause in § 218(a), which the court recognized did not address remedies, and the congressional purpose of the FLSA to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers."  564 F. Supp. 2d at 884-85 (quoting <u>Anderson</u>, 508 F.3d at 192 (quoting 29 U.S.C. § 202(a))).  This Court is not similarly persuaded the savings clause does so much and is rather persuaded the procedural conflict is central to the analysis.

In this case – which involves claims on behalf of similarly situated employees – the most significant conflict between the FLSA and IWPCL claims is the difference between § 216(b) and Rule 23's opt-out procedure.  The language requiring FLSA collective-action plaintiffs to opt in was absent from the FLSA as enacted.  The original statute read,

> Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated, or such employee or employees may designate an agent or representative to maintain such action for and in behalf of all employees similarly situated.

29 U.S.C § 216 (1940).

In 1947, Congress amended the FLSA by passing the Portal-to-Portal Act because

> The Congress finds that the Fair Labor Standards Act of 1938, as amended, has been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers with the results that, if said Act as so interpreted or claims arising under such interpretations were permitted to stand, (1) the payment of such liabilities would bring about financial ruin of many employers and seriously impair the capital resources of many others . . .

Portal-to-Portal Act of 1947, 61 Stat. 84 (codified at 29 U.S.C. § 251).

Section 5 of the Portal-to-Portal Act, titled "Representative Actions Banned," amended section 16(b) of the FLSA so that it now reads:  "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is

filed in the court in which such action is brought." 61 Stat. 87 (codified at 29 U.S.C. § 216(b)). This amendment clearly seeks a balance between protecting employees and shielding employers from excessive liability. <u>Williamson</u>, 208 F.3d at 1154.[6] It would undermine this balance to allow Plaintiffs to assert their FLSA claim on behalf of similarly situated employees while using a duplicative state wage-collection law to bootstrap in the more generous procedure of Rule 23.[7]

Finally, the cases involving supplemental jurisdiction are distinguishable. As noted, <u>Lindsay</u> held that the "mere *procedural* difference" between § 216(b) and Rule 23 is not enough to "curtail section 1367's *jurisdictional* sweep." 448 F.3d at 424. <u>Lindsay</u> expressly tabled consideration of "any policy decision implicit in section 216(b)'s opt-in requirement," and the court relied on the congressional purpose of 28 U.S.C. § 1367 to extend federal courts' supplemental jurisdiction to the constitutional maximum. <u>Id.</u> Unlike in the supplemental jurisdiction context, the preemption doctrine relevant here places the policy behind § 216(b) squarely at issue.

------

[6] <u>Marquez v. Partylite Worldwide, Inc.</u>, No. 07-C-2024, 2007 WL 2461667 (N.D. Ill. Aug. 27, 2007), also discusses the legislative history of the FLSA and Portal-to-Portal Act. <u>Marquez</u> refused to strike the plaintiff's state-law wage claims because the court found it significant that the FLSA does not expressly provide that § 216(b)'s opt-in procedure applies to all wage disputes. However, the court held that because of the FLSA's conflict with Rule 23 and Congress' intent to establish an opt-in procedure for wage disputes, the state-law wage class action claims were unlikely to meet Rule 23's "superiority requirement." <u>Id.</u> at *3-*6.

[7] At the hearing, Plaintiffs argued that Rule 23 actually contains a less favorable procedure than § 216(b) because Rule 23(b)(3) requires the court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This logic is not persuasive because § 216(b) requires a similar analysis. Although district courts in the Eighth Circuit have routinely applied a two-part test to determine the propriety of a collective action under § 216(b), and the first step involves a fairly lenient standard, plaintiffs still must eventually prove that members of the purported collective are in fact similarly situated. <u>Parker v. Rowland Express, Inc.</u>, 492 F. Supp. 2d 1159, 1164 (D. Minn. 2007); <u>Freeman v. Wal-Mart Stores, Inc.</u>, 256 F. Supp. 2d 941, 944 (W.D. Ark. 2003).

The Eighth Circuit's decision in <u>Bouaphakeo II</u>, which indicated that FLSA claims and IWPCL claims can be joined in a single trial, is also distinguishable.  765 F.3d at 796 n.4.  This Court agrees that, although complicated, it is possible to try FLSA and IWPCL claims simultaneously.  <u>See</u> <u>Salazar</u>, 527 F. Supp. 2d at 886 (holding that notwithstanding potential confusion, "[t]he court is well-equipped to manage a case involving an FLSA collective action and a state-law class action").  However, it is a different question whether the FLSA preempts duplicative claims that seek to utilize a procedure that conflicts with § 216(b).  The Eighth Circuit has not addressed this question, but this Court finds that the conflict between § 216(b) and Rule 23 requires the Court to hold that the FLSA does preempt duplicative state-law claims on behalf of similarly situated employees.

Accordingly, the Court must next determine whether Plaintiffs' IWPCL claims are duplicative of their FLSA claims.  As explained, the IWPCL does not independently establish the amount of wages that an employer must pay its employees.  Iowa Code § 91A.3 (providing, without defining the amount due, "[a]n employer shall pay all wages due its employees . . . ."); <u>Bouaphakeo</u>, 564 F. Supp. 2d at 883.  In <u>Bouaphakeo</u>, the plaintiffs failed to "state what law or right – other than those rights conferred by the FLSA – they rely on that establishes they are entitled to the wages they seek;" accordingly, the court concluded that the plaintiffs' IWPCL claims duplicated their FLSA claims.  <u>Id.</u> at 883 (citing <u>Bartleson v. Winnesbago Indust. Inc.</u>, 219 F.R.D. 629, 639 (N.D. Iowa 2003)).  Moreover, courts have noted that appending an IWPCL claim to a successful FLSA claim does not allow the plaintiffs to recover any additional relief.  <u>Bartleson</u>, 219 F.R.D. at 634 ("It is true that the IWPCL claim affords the potential class members no additional relief beyond what could be obtained on the FLSA claim . . . .").

Of course, this Court agrees that "[a] violation of the IWPCL, however, is not always dependent upon establishing a violation of the FLSA. . . .  The wages due under the IWPCL

could be based on any number of legal bases, such as an employment agreement or Iowa's minimum wage law." Bouaphakeo, 564 F. Supp. 2d at 884 n.9; see also Runyon v. Kubota Tractor Corp., 653 N.W.2d 582 (Iowa 2002) (considering whether certain reductions of a bonus to which the plaintiff otherwise would have been entitled pursuant to his compensation package violated the IWPCL).  Plaintiffs may have common law causes of action entitling them to wages under state wage-collection laws.  For example, in Williamson, 208 F.2d at 1144, the Ninth Circuit decided that the plaintiffs' state-law fraud claims – which arose out of the defendants' pressure on the plaintiffs not to join an FLSA lawsuit and the defendants' allegedly false statements about the plaintiffs' opportunity for advancement and job security – were not duplicative of their FLSA claims.  Similarly, in Osby, the Western District of Missouri found that the plaintiffs' state-law unjust enrichment claims might not depend on establishing an FLSA violation because some plaintiffs may have been paid more than the federal minimum wage, worked less than 40 hours, but have still been uncompensated for some work.  2008 WL 2074102, at *2. Likewise, in Roble, the District of Minnesota held that "[w]hile additional discovery may reveal that plaintiffs' common law [breach of contract, unjust enrichment, and quantum meruit] claims are in fact duplicative of the[ir] statutory claims, the Court cannot conclude at this stage of the proceedings that the underlying common law claims are preempted by the FLSA."  2006 WL 3858396, at *3.

In this case, like in Bouaphakeo, Plaintiffs' Petitions do not state any legal theory entitling them to wages collectable under the IWPCL other than a violation of the FLSA.  At the hearing, Plaintiffs insinuated that Defendants breached a contract to pay them for all the hours they worked.  Plaintiffs asserted that if their FLSA claim failed, they could recover ordinary wages, although not time-and-a-half, under the IWPCL.  However, none of Plaintiffs' Petitions expressly contain a breach of contract claim or any other substantive state-law claim entitling

Plaintiffs to wages under the IWPCL.  Although the Petitions contain the bald allegation that Defendants "agreed to compensate Plaintiffs, and other similarly situated employees, on an hourly basis for the work they performed," Plaintiffs have not alleged any other facts indicating the terms of an employment contract.

Plaintiffs' Petitions do not assert the amount of wages that Defendants agreed to pay them. The Court finds it implausible that Defendants would contract to pay Plaintiffs less than the amount to which they are entitled under the FLSA, especially given Plaintiffs' allegation that Defendants classified Plaintiffs as non-exempt employees.  See Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 740 (1981) ("[W]e have held that FLSA rights cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate.") (quotation marks and citation omitted).  Moreover, the mere agreement to pay Plaintiffs for their work does not necessarily make the IWPCL claims independent of the FLSA claims.  See Williamson, 208 F.3d at 1153 (suggesting that a contract claim alleging failure to pay overtime "directly implicate[s] the FLSA's statutory provisions").  Therefore, the Court finds that Plaintiffs' IWPCL claim is dependant on, and duplicative of, their FLSA claim.  Accordingly, the FLSA preempts Plaintiffs' IWPCL claim on behalf of similarly situated employees, and the Court must grant Defendants' motion to dismiss that claim.

### D.   Meaning of "Employer" under IWPCL

In the alternative, Defendants argue that individual defendants Malone and Freese cannot be individually liable under the IWPCL because they are not Plaintiffs' "employer" within the meaning of the statute.  The IWPCL provides that "'[E]mployer' means a person, as defined in [Iowa Code § 4.1(20)], who in this state employs for wages a natural person."  Iowa Code § 91A.2.  At the hearing, Plaintiffs conceded that Malone and Freese are not Plaintiffs' employer.

Accordingly, even if the FLSA did not preempt Plaintiffs' IWPCL claims in this case, the

Court would grant Defendants' motion to dismiss Plaintiffs' IWPCL claims against the

individual defendants.

### E.   Similarly Situated Plaintiffs

Defendants argue that Plaintiffs have failed to state a plausible claim that there are any

"similarly situated" employees entitled to relief.   Defendants note that Plaintiffs have not yet

asked the Court to certify a class action or collective action, and Defendants contend that Plain-

tiffs have not alleged sufficient facts to support such certifications.   Defendants argue that Plain-

tiffs' First Amended Petition purported to assert claims on behalf of "every current and former

Wells Fargo employee, without regard to job title, job duties, location, [or] department, . . . who

were subject to an unidentified 'policy or practice of having to work 'off-the-clock.''"   Mot.

Dismiss 12, ECF No. 4-1.   Moreover, Defendants assert that, even if true, Plaintiffs' allegation

that Malone and Freese pressured them to work off the clock indicates that Plaintiffs are not

similarly situated as they would each respond differently to the pressure.

Plaintiffs essentially argue that – given that a court must, upon motion, use a two-step

process to determine whether it should certify an FLSA collective action[8] – Plaintiffs were not

yet required to plead sufficient facts to warrant certification of their collective action.   Moreover,

Plaintiffs assert that the first step in FLSA collective certification merely requires establishing a

colorable basis that Plaintiffs are similarly situated, meaning that they were all victims of a

single decision, policy, or plan.   Plaintiffs argue that they must be allowed discovery before the

---

[8] See supra note 6 (explaining the two-step process of collective action certification under
§ 216(b)).

Court conducts the second step[9] and makes a factual determination regarding whether Plaintiffs are similarly situated.

As noted, Plaintiffs have repeatedly sought leave to further amend their Petition to address Defendants' objections.  The Second and Third Amended Petitions significantly reduce the size of the potential collective action.  The Third Amended Petition describes the "similarly situated employees" as current and former Home Preservation Specialists I and II in the Bank and Private Division of Wells Fargo who worked in the Des Moines area within the past three years.  Plaintiffs estimate that there are between 150 and 200 of these individuals.  Like the original Petition, the Third Amended Petition states that Malone and Freese required the named plaintiffs and other similarly situated employees to assume workloads that they could not reasonably perform within a forty-hour week.  The Third Amended Petition further asserts that Plaintiffs were required to work on at least sixty files but were routinely assigned up to 100 files.[10]

There is some confusion regarding the applicable standard for a motion to dismiss an FLSA collective action.  Some courts have "not required plaintiffs to plead any facts in support of the collective action at the motion to dismiss stage."  Dyer v. Lara's Trucks, Inc., No. 1:12-CV-1785-TWT, 2013 WL 609307, at *3 (N.D. Ga. Feb. 19, 2013) (citing Hoffman v. Cemex, Inc., No. H-09-3144, 2009 WL 4825224 (S.D. Tex. Dec. 8, 2009)).  Those courts deferred consideration of whether the plaintiffs were similarly situated until the plaintiffs moved for

---

[9] The second step would likely be precipitated by Defendants' motion to decertify the collective.  Freeman, 256 F. Supp. 2d at 945.

[10] Arguably, the Third Amended Petition is less detailed than the Second Amended Petition because it removes the allegation that Plaintiffs worked on at least sixty cases involving defaulting borrowers.  The Third Amended Petition omits mention of defaulting borrowers and merely asserts that Plaintiffs were required to work on at least "sixty files" but were routinely assigned up to 100 files.  Because the similarly situated plaintiffs have the same job title, omitting mention that their work concerned borrowers in default does not appear to be material.

conditional certification of their collective action.  See Lang v. DirecTV, Inc., 735 F. Supp. 2d

421, 435-36 (E.D. La. 2010) ("The Court finds that defendants' motion to dismiss is premature

because plaintiffs have not moved for certification and have had no opportunity to develop a

record.").  However, other courts have found that plaintiffs must meet the normal pleading

requirements of Rule 8 even when the complaint involves an FLSA collective action.  Dyer,

2013 WL 609307, at *3 (citing St. Croix v. Genentech, No. 8:12-CV-891, 2012 WL 2376668

(M.D. Fla. June 22, 2012); Pickering v. Lorillard Tobacco Co., No. 2:10-CV-633, 2011 WL

111730 (M.D. Ala. Jan. 13, 2011)); see also Pruell v. Caritas Christi, 678 F.3d 10, 13 (1st Cir.

2012) (applying Iqbal and Twombly to assess the sufficiency of a complaint alleging violations

of the FLSA).  Decisions that reason that a complaint asserting an FLSA collective action must

first meet the ordinary standards of Rule 8 are more persuasive.  See Dyer, 2013 WL 609307, at

*3.  As discussed above, all complaints must "contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting

Twombly, 550 U.S. at 570).

      Although Griffith v. Wells Fargo Bank, N.A., No. 4:11-CV-1440, 2012 WL 3985093, at

*3 (S.D. Tex. Sept. 12, 2012), considered a more complete record and a motion to conditionally

certify an FLSA collective (rather than a pre-answer motion to dismiss), the case is relevant here

because it concerns similar factual allegations as this case.  *Inter alia*, the Griffith plaintiffs

argued that "the time-keeping software Wells Fargo [(the defendant)] uses did not allow loan

processors to input their actual work schedule . . . [and] the work load for loan processors is too

high to be performed within forty hours, yet Wells Fargo discourages employees from recording

overtime . . . ."  Id.  The court found that the plaintiffs' arguments were "flatly contradicted by

the evidence before the Court."  Id.  The court found that the plaintiffs could input overtime in

the timekeeping system, and Wells Fargo's official policy required employees to record all their

time.  Id.  Accordingly, the court found that any pressure not to work overtime "must be the
product of unofficial limitations."  Id. at *4.[11]  This caused the court to refuse to conditionally
certify the class as

> The "pressure" that loan processors feel . . . is based on the loan processors' individual
> ability to perform efficiently, subjective impression of the degree of pressure to which
> they are subjected, and office-specific experiences relating to the actions of office or
> division supervisors.  Although it may be the case that [the named plaintiff] felt pressure
> to perform uncompensated overtime work, there is no indication that loan processors
> nationwide felt a similar pressure.

Id.

Moreover, the court found that "[w]hile it may be the case that Wells Fargo uniformly
expects efficiency from its loan processors, nothing before the Court suggests that loan
processors are subject to a uniform, or even a similar, policy of unlawful pressure against
overtime reporting."  Id. at *5.  See also Richardson v. Wells Fargo Bank, N.A., No. 4:11-CV-
00738, 2012 WL 334038, at *4 (S.D. Tex. Feb. 2, 2012) (denying certification of a national
collective as "it is clear that resolution of each Plaintiff's claim will require individualized
inquiries about his or her specific managers' policies and practices").[12]

---

[11] Notably, although, "the existence of a written policy dictating overtime pay is one factor
weighing against conditional certification.  However, at this early stage of litigation, the mere
fact that [the defendant] has a written policy does not defeat Plaintiffs' motion in light of Plain-
tiffs' countervailing evidence of a centralized policy to not pay overtime."  Burch v. Qwest
Commc'ns Int'l, Inc., 500 F. Supp. 2d 1181, 1188 (D. Minn. 2007) (citation omitted).

[12] Defendants also cite Briggins v. Elwood TRI, Inc., 882 F. Supp. 2d 1256 (N.D. Ala.
2012), in which the court granted the defendants' motion to decertify an FLSA collective action.
Defendants argue that this case stands for the proposition that employees will have myriad
responses to pressure to work off the clock and this makes a collective action inappropriate.
Read more closely, the Briggins court appears to have declassified the collective action because
of factual differences in the plaintiffs' job functions.  Id. at 1266.  Regardless, Briggins con-
sidered a much fuller record and applied a different standard than at issue in this case.

Jones v. Casey's General Stores, 538 F. Supp. 2d 1094, 1101 (S.D. Iowa 2008), involved a procedural posture more similar to this case.  The court considered whether to allow the plaintiffs to amend their complaint – which originally asserted only overtime claims – to include violations of the FLSA's minimum wage provisions.  Id.  Although the court had previously conditionally certified a collective action regarding the overtime claims, it considered whether an amended complaint asserting minimum wage claims would be futile.  Id. at 1097, 1101.  The court explained that an FLSA minimum wage complaint should, "at least approximately, allege the hours worked for which [minimum] wages were not received."  Id. at 1102 (quoting Zhong v. August August Corp., 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007)).  In addition, where a plaintiff brings an FLSA claim on behalf of "'other employees similarly situated,' the complaint should indicate who those other employees are, and allege facts that would entitle them to relief."  Id. (quoting Zhong, 498 F. Supp. 2d at 629 (quoting 29 U.S.C. § 216(b))).[13]

Similarly, in Pruell, 678 F.3d 10, the First Circuit approved of the lower court's granting of the defendants' motion to dismiss an FLSA collective action.  The court stated that an amended complaint's allegation that the plaintiffs "regularly worked hours over 40 in a week and were not compensated for such time" is a "borderline" phrase that is "so threadbare" that it fails to "cross

---

[13] Ultimately, the Jones court found that the plaintiffs' minimum wage claim was "implausible on its face."  538 F. Supp. 2d at 1101.  The Court noted that the mere allegation that the plaintiffs were unpaid for the time that they worked in excess of forty hours was insufficient to state a minimum wage claim as the plaintiffs needed to show that their total compensation was below minimum wage.  Id. at 1102 (citing Hensley v. MacMillan Bloedel Containers, Inc., 786 F.2d 353, 357 (8th Cir. 1986)).  The court continued, "Indeed, there is not, on the face of the Amended Complaint, a single factual allegation that would permit an inference that even one member of the Plaintiffs' collective has 'a right to relief above the speculative level.'  Id. (quoting Twombly, 550 U.S. at 555).  The court noted that previously submitted affidavits from four representative plaintiffs revealed that those plaintiffs would not have a viable minimum wage claim.  Id. at 1103 n.4.  Even considering the asserted unpaid hours, the named plaintiffs' total pay still exceeded the minimum wage.  Id.  There is no similar evidence that discredits Plaintiffs' claim in this case.

the line between the conclusory and the factual." Id. at 13 (quoting Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011) (quoting Twombly, 550 U.S. at 557 n.5)).  The court remarked that the plaintiffs' most concrete allegation was that they routinely worked through lunch, even though the time-keeping system automatically clocked them out for a lunch break. Id. at 14.  Yet, the court found that this allegation was insufficient as the amended complaint "does not provide examples (let alone estimates as to the amounts) of such unpaid time for either [named] plaintiff or describe the nature of the work performed during those times."  Id. Accordingly – especially given that the district court had asked for more detail by dismissing the first complaint without prejudice – the circuit court found that the amended complaint was "deficient although not by a large margin."  Id.

In addition, Defendants point to Pickering, 2011 WL 111730.  In Pickering, the Middle District of Alabama dismissed claims on behalf of the named plaintiff and the purportedly similarly situated employees.  The court stressed that because the complaint lacked a job description of the similarly situated plaintiffs, the complaint provided "no factual basis by which to assess whether Plaintiff and the other employees are similarly situated."  Id. at *3.  The Middle District of Florida reached a similar holding in St. Croix, 2012 WL 2376668.  The court dismissed the claim on behalf of similarly situated employees because "the Complaint provides no description of the job duties (or even the job titles) of the allegedly similarly situated employees."  Id. at *3.

Finally, Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 258 (1997), is a pre-Iqbal and Twombly case that refused to dismiss a complaint on behalf of similarly situated plaintiffs.  In discussing whether to allow the named plaintiffs, managers of a Sbarro restaurant, to notify purportedly similarly situated plaintiffs of their claim, the court explained that the plaintiffs met their burden to show that others were similarly situated.  The court found that the plaintiffs

"made substantial allegations, both in their Complaint and supporting affidavits, that [all] Sbarro's restaurant managers were subject to reductions in their compensation as result of a uniform company-wide policy requiring them to reimburse defendant for cash shortages and other losses." Id. at 261.

In this case, as in Pruell, the allegations on behalf of others similarly situated are on the "borderline" between factual and conclusory. See Pruell, 678 F.3d at 13. Plaintiffs do not state a claim that is as compelling as the complaint at issue in Hoffmann because Plaintiffs have not alleged any structural feature of Wells Fargo's time-keeping system that systematically violates the protections of the FLSA. Cf. Hoffmann, 982 F. Supp. at 261; Bouaphakeo, 564 F. Supp. 2d at 879 (describing allegations that the defendant routinely did not adequately compensate the plaintiffs for time spent donning and doffing their personal protective equipment).

Yet, the Third Amended Petition meets the standard of Jones and Zhong because it, at least loosely, articulates who the similarly situated employees are and facts that would entitle them to relief. See Jones, 538 F. Supp. 2d at 1102. The Court agrees with Defendants that the allegation that Plaintiffs worked on more than sixty files is unhelpfully vague. However, the Third Amended Petition clearly asserts that the ostensibly similarly situated plaintiffs are Home Preservation Specialists in the bank and private division of Wells Fargo who worked in the Des Moines area within the past three years and who each faced pressure from Malone and Freese to work off the clock.[14] Moreover, the allegation that Plaintiffs were required to maintain a benchmark of

_____

[14] At the hearing, Plaintiffs asserted that there may be similarly situated plaintiffs who were not supervised by Malone and Freese. This statement, which lacked any additional detail, does not currently allow an inference of a right to relief that rises "above the speculative level." Twombly, 550 U.S. at 555. Moreover, the Petitions specifically allege that, "During the course of Plaintiffs' employment, Defendant Wells Fargo, *through its managers and/or supervisors, Malone and Freese*, required Plaintiffs and other similarly situated employees to assume workloads that could not reasonably be performed within a forty hour work week." Second Am. Pet. ¶¶ 17, ECF No. 7-1.

sixty files but were routinely assigned up to one hundred files lends support to Plaintiffs' conten-tion that they faced pressure to perform workloads that they could not complete in forty hours per week.  Even though the Petition lacks a detailed description of Plaintiffs' job duties, the factual allegations make out a plausible claim that all the purported plaintiffs – who had the same job title and worked in the same geographic area – were subject to a similar policy of unlawful pressure from common supervisors not to report overtime.

This specificity distinguishes this case from the cases Defendants cite.[15]  Griffith and Richardson denied certification of vague national collectives.  See Griffith, 2012 WL 3985093, at *4 (suggesting that certification of claims involving pressure to work overtime was inappro-priate because the potential plaintiffs did not share "*office-specific experiences*" (emphasis added)); Richardson, 2012 WL 334038, at *4 (denying broad certification because it would require "individualized inquiries about . . . *specific managers*' policies and practices" (emphasis added)).

In addition, Pickering and St. Croix faulted complaints for failing to provide adequate job descriptions and failing to identify relevant company policies.  As noted, the Third Amended Petition does not provide a detailed description of Plaintiffs' job duties, but it does provide that all the purported collective members had the same job title, were under the direction of the same supervisors, were paid hourly, and that they were pressured to work between 50 and 60 hours without payment for overtime because of an excessive workload.  This gives rise to the rational

---

[15] Arguably, Pruell affirmed the dismissal of claims with more factual support than Plain-tiffs have made here as Pruell alleged that they regularly worked through lunch yet they were automatically clocked out for a lunch break.  Pruell, 678 F.3d at 14.  However, the Pruell court found the plaintiffs' allegations especially lacking given that the district court had already asked for more detail.  Id.  Moreover, the court allowed the plaintiffs to amend their complaint. Accordingly, Pruell does not definitively urge the Court to dismiss Plaintiffs' Third Amended Petition.

inference that Plaintiffs performed the same work and were subject to the same policies.  The Amended Petitions do not contain clear factual support for the allegation that Malone and Freese pressured Plaintiffs to work off the clock, but Plaintiffs' allegations contain enough factual content to allow the Court "to draw the reasonable inference that [D]efendant is liable for the misconduct alleged."  See Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

## III.   CONCLUSION

For the reasons stated, Plaintiffs' Motions for Leave to Amend, ECF No. 7 & 15, are **granted except as to Count 1, which is futile.**  Defendants' Motion to Dismiss, ECF No. 4, is **granted in part and denied in part.**  Defendants' motion to dismiss Count 1 must be **granted**; Defendants' motion for partial dismissal of the claim in Court 2 on behalf of other employees similarly situated must be **denied**.

**IT IS SO ORDERED.**

Dated this 28th day of October, 2014.

JAMES E. GRITZNER, Chief Judge
U.S. DISTRICT COURT